# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1477

_____

Holly Cox,

           Appellee,

v.

Dubuque Bank & Trust Company,

           Appellant.

Appeal from the United States
District Court for the
Northern District of Iowa.

_____

Submitted: October 15, 1998
Filed: December 22, 1998

_____

Before BOWMAN, Chief Judge, HANSEN, Circuit Judge, and VIETOR,[1] District
Judge.

_____

BOWMAN, Chief Judge.

Holly Cox sued her former employer, Dubuque Bank and Trust ("DB&T" or
"the Bank"), alleging the Bank had discharged her on the basis of her age and sex in
violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-
634 (1994), and Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000e to e-17
(1994). A jury found for Ms. Cox on her ADEA age-discrimination claim, and the

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern
District of Iowa, sitting by designation.

District Court entered judgment on the jury verdict. DB&T appeals, claiming the District Court erred when it (1) denied the Bank's motion for judgment as a matter of law; (2) refused to give a jury instruction the Bank proposed regarding an employer's right to make reasonable inquiries into an employee's retirement plans; and (3) refused to order Ms. Cox's reinstatement and instead calculated Ms. Cox's front pay in a manner DB&T contends was improper. This Court concludes the District Court erred when it denied the Bank's request that a jury instruction be given regarding an employer's right to make reasonable inquiries into an employee's retirement plans. Therefore, the case is reversed and remanded for a new trial.

I.

Because the Bank has appealed on the grounds it was entitled to judgment as a matter of law, we recite the facts of this case in the light most favorable to the jury verdict. See Newhouse v. McCormick & Co., 110 F.3d 635, 639 (8th Cir. 1997). Ms. Cox was born on June 20, 1943, and started working for DB&T as a teller at its Main Bank in July 1968. She received a series of promotions, and in 1984 transferred from the Main Bank to serve as a loan officer and branch manager at the Plaza Branch, one of DB&T's four branches. Subsequently, the Bank made a number of changes to its organizational structure that affected Ms. Cox's title and duties. The Bank stopped designating individuals as branch managers, and it converted its loan officers into financial service counselors, who, in addition to lending responsibilities, had deposit duties and actively attempted to sell the Bank's retail services to deposit customers. By 1994, when the Bank discharged Ms. Cox, she was working as a loan officer and financial service counselor at the Plaza Branch.

In 1987, while she was working at the Plaza Branch, Ms. Cox became engaged to and subsequently married Don Cox. Mr. Cox served as an agency manager for State Farm Insurance Company and did considerable work with DB&T. Mr. Cox also

socialized with several Bank officers and employees, who--because Mr. Cox was ten years older than Ms. Cox--believed Mr. Cox would soon retire.  Soon after Ms. Cox's engagement, when Ms. Cox was in her mid-forties, these Bank officers and employees started referring to Ms. Cox as a "short-timer" and asking her if she planned to retire when her husband retired.  Ms. Cox denied that she had such plans, but the rumor spread and DB&T employees persisted in asking Ms. Cox about her alleged impending retirement.  Ms. Cox testified that, despite her denials, she was asked or heard comments about her retirement plans almost every week for more than two years.

On June 21, 1994, one day after Ms. Cox turned fifty-one years old, DB&T officers informed her that the Bank, based on responses to a customer survey, would close the Plaza Branch in November 1994.  The Bank also informed Ms. Cox that it would have no position for her after the branch closed.  However, the Bank did relocate all other Plaza Branch employees, including two tellers, a teller-supervisor, and nineteen or twenty employees from the Bank's Trust Department, which had been located in a storefront next to the Plaza Branch.

Ms. Cox timely filed a claim with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.  Upon receiving a right-to-sue letter, Ms. Cox filed suit against DB&T, alleging it had discriminated against her on the basis of her age and sex in violation of the ADEA and Title VII.  To prove her age discrimination claim, Ms. Cox offered evidence that can be grouped in five categories.  First, Ms. Cox introduced evidence that she, a member of the class protected by the ADEA, was the only Bank employee working at the Plaza Branch who was not offered another position at DB&T when it closed the branch.  Second, Ms. Cox introduced evidence that, after she became engaged to Mr. Cox, she repeatedly had been referred to as a "short-timer" and asked by her co-workers and supervisors if she intended to retire at the same time as her husband.  Third, Ms. Cox introduced evidence that in March 1994 DB&T hired two financial service counselors younger than Ms. Cox, and, after closing the Plaza Branch, retained both these employees instead of Ms. Cox,

-3-

although the new financial service counselors had not yet assumed permanent duties. Fourth, Ms. Cox introduced evidence that her supervisor, twenty-seven-year-old Lisa Stevenson, had shown animosity toward Ms. Cox, and Ms. Cox introduced evidence from which a jury could infer that the animosity was based on age. For example, Ms. Cox showed Ms. Stevenson voiced reservations about supervising Ms. Cox, doubted Ms. Cox's ability to perform as a financial services counselor, and entered a series of memoranda critical of Ms. Cox's performance into Ms. Cox's personnel file without notifying Ms. Cox. In one of these memoranda, produced by Ms. Cox at trial, Ms. Stevenson said Ms. Cox's decades of banking experience were "irrelevant" to her performance as a financial service counselor. Finally, Ms. Cox introduced testimony that some Bank officers blamed Ms. Cox's discharge on her job performance, and she introduced evidence tending to show these claims were pretextual.

After a three-day trial, a jury returned a verdict finding the Bank had violated the ADEA by discriminating against Ms. Cox on the basis of her age when it discharged her. (The jury found for DB&T on the sex discrimination claim and a sex-and-age discrimination claim; these findings are not appealed.) The jury awarded Ms. Cox $20,000 in back pay. The District Court added $69,498.31 in front pay, $52,805.50 in attorney fees, and $4,246.12 in costs. DB&T moved for a judgment as a matter of law or a new trial. When the District Court denied this motion, DB&T appealed.

II.

DB&T first argues that the evidence of age discrimination presented at trial was not sufficient to sustain a verdict in Ms. Cox's favor, and that the District Court erred when it denied the Bank's motion for judgment as a matter of law. This Court reviews de novo a district court's denial of judgment as a matter of law. See Cross v. Cleaver, 142 F.3d 1059, 1066 (8th Cir. 1998). Applying the same standard as the district court, this Court must determine whether Ms. Cox presented evidence sufficient to allow a reasonable jury to find that the Bank had discriminated against her on the basis of her

-4-

age. See Newhouse, 110 F.3d at 639. This Court must affirm the jury's verdict unless, "after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." Id. (quoting Ryther v. KARE 11, 108 F.3d 832, 835 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997)).

After viewing the facts of this case in the light most favorable to Ms. Cox, this Court cannot conclude that no reasonable juror could find in her favor. After showing that she was a member of the class protected by the ADEA, Ms. Cox presented evidence that she was the only Bank employee not retained when DB&T closed the Plaza Branch. The Bank had found positions for all the other Plaza Branch employees, but said it could not find a position for her, an experienced and competent financial service counselor, despite the fact that it anticipated finding positions for two new, younger, unassigned financial service counselors. In addition, Ms. Cox presented evidence that Bank employees and officers, including those with decision-making authority regarding her employment, repeatedly asked Ms. Cox when she would retire and indicated they expected her to retire soon. Ms. Cox also presented testimony from which a reasonable juror could find that Ms. Cox's immediate supervisor, Lisa Stevenson, showed animosity toward Ms. Cox on the basis of her age, and that this age-based animosity might have been a cause for Ms. Cox's discharge.

This Court has some doubts regarding the sufficiency of Ms. Cox's evidence, particularly since two of the employees relocated by DB&T after the closing of Plaza Branch were older than Ms. Cox and one of the new, younger financial service counselors was only two years younger than Ms. Cox. However, we cannot conclude that no reasonable juror could find that DB&T had discriminated against Ms. Cox on the basis of her age when it discharged her. This Court therefore finds there is sufficient evidence to uphold the jury's verdict, and affirm the District Court's denial of the Bank's motion for judgment as a matter of law.

III.

Since this Court has found the evidence sufficient to uphold the jury's verdict, and thus cannot grant DB&T judgment as a matter of law, we must next determine if the District Court properly instructed the jury. At the instructions conference, DB&T asked the District Court to instruct the jury regarding an employer's right to make reasonable inquiries into an employee's retirement plans. The Bank proposed the following instruction: "You are specifically instructed that neither the state nor the federal law prohibits an employer from asking the retirement plans of an employee if reasonable under the circumstances." Trial Tr. at 569. The District Court omitted this proposed instruction from the charge based on its belief that "the defendant's proposed instruction on this issue was tantamount to saying that there was nothing wrong with repeated retirement inquiries" asked of an employee "after she stated that she was not interested in early retirement." Cox v. Dubuque Bank & Trust Co., No. C96-1004, slip op. at 5-6 (N.D. Iowa Jan. 13, 1998) (Order).

When a party claims a district court erred in refusing to give a proposed jury instruction, this Court applies a deferential standard, reversing only for an abuse of discretion. See Thomlison v. City of Omaha, 63 F.3d 786, 790-91 (8th Cir. 1995). In Thomlison, this Court adopted a standard of review that divides the inquiry of whether the district court abused its discretion when it refused to adopt a proposed instruction into three parts: the proposed instruction must (1) correctly state the applicable law; (2) address matters not adequately covered by the charge; and (3) involve a point "so important that failure to give the instruction seriously impaired the party's ability to present an effective case." Id. (quoting Wood v. President & Trustees of Spring Hill College, 978 F.2d 1214, 1221 (11th Cir. 1992)). The third part of this test, that failure to give the proposed instruction must have "seriously impaired the party's ability to present an effective case," incorporates this Court's requirement that failure to give a proposed instruction must result in prejudice to the requesting party before a new trial will be ordered. See, e.g., Walker v. AT&T Techs., 995 F.2d 846, 849 (8th Cir. 1993).

Reviewing DB&T's proposed instruction, we find it correctly states the applicable law. Although this Court has not directly addressed the issue, many courts have recognized that an employer may make reasonable inquiries into the retirement plans of its employees. See, e.g., Woythal v. Tex-Tenn Corp., 112 F.3d 243, 247 (6th Cir. 1997) (stating that, where an employee had generated many of the rumors regarding his pending employment, an employer was "entitled to inquire . . . whether the rumors were true"); Moore v. Eli Lilly & Co., 990 F.2d 812, 816 (5th Cir.) (stating that a new supervisor may inquire about the age and retirement plans of employees to "gauge the anticipated longevity of [the] crew"), cert. denied, 510 U.S. 976 (1993); Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir. 1992) ("[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct."). Sometimes retirement inquiries are so unnecessary and excessive--that is, unreasonable--as to constitute evidence of discriminatory harassment. See, e.g., Guthrie v. J.C. Penney Co., 803 F.2d 202, 208 (5th Cir. 1986). However, when the inquiries are reasonable given the circumstances, a plaintiff should not be able to rely on those inquiries to prove intentional discrimination. See Woythal, 112 F.3d at 247 (finding an employer's questions regarding an employee's retirement plans were reasonable); Colosi, 965 F.2d at 502 (refusing to consider two inquiries regarding an employee's retirement plans as direct evidence of age discrimination). Therefore, the Bank's proposed instruction, which says that neither state nor federal law prohibits an employer from making retirement inquiries "reasonable under the circumstances," correctly states the relevant law.[2]

---

[2]The Iowa Civil Rights Act of 1965, like comparable federal law, prohibits the discharge of an employee because of that employee's age. See Iowa Code Ann. § 216.6 (West 1994). This Court could not locate any Iowa cases that address an employer's right under the Iowa Civil Rights Act to make reasonable inquiries into an employee's retirement plans. However, because the Iowa courts normally look to comparable federal law when interpreting their civil rights statutes, see, e.g., Dutcher v. Randall Foods, 546 N.W.2d 889, 897 (Iowa 1996), DB&T's proposed instruction appears to portray state as well as federal law correctly.

This Court also finds that the proposed instruction addresses matters not adequately covered by the charge to the jury. No language in the charge addressed the issue of retirement inquiries, nor the right of an employer to make reasonable inquiries. DB&T's proposed instruction addressed a matter that was not covered at all by the District Court's charge.

Finally, this Court concludes that the failure to give the proposed instruction seriously impaired the Bank's ability to present an effective case. Ms. Cox relied heavily on evidence regarding repeated retirement inquiries and Bank employees' beliefs she would soon retire to prove that DB&T had violated the ADEA. During her opening statement, the plaintiff mentioned Bank employees' inquiries about her retirement plans at least six times. See Trial Tr. at 19 (promising the jury the plaintiff would "present evidence about the many, many times Holly [Cox] was asked if she was retiring"); id. at 22 (relating that Bank employees asked Ms. Cox "point blank, 'Are you going to retire now that you are married?'"); id. at 23 (saying one of Ms. Cox's supervisors said, "'Holly, we need to know your retirement plans.'"); id. at 26 (saying Ms. Cox "continue[d] to be asked, 'When will you retire?'"); id. at 27 ("She was telling them 'I'm not retiring. Why do you keep asking me[?]' but it seemed to be going over everybody's head."); id. at 28 (saying that when Ms. Cox met with her supervisors to learn she was discharged, "The . . . first words out of anybody's mouth come from [the Bank's president,] 'Holly, what are your retirement plans?'"); see also id. at 25, 30 (discussing Bank employees' beliefs that Ms. Cox would soon retire). Twelve witnesses--most of the witnesses called at trial--also testified regarding inquiries or comments made to Ms. Cox about her retirement or Bank employees' beliefs that she would retire soon.[3] Furthermore, Elizabeth Creger, the Dubuque Human Rights

---

[3]The twelve witness who testified regarding retirement inquiries or the Bank employees' beliefs that Ms. Cox would retire at the same time as her husband were: Ms. Cox herself, see Trial Tr. at 69, 73-74, 137-40, 150; Nelson Klavitter, Vice President of Operations, see id. at 101; Don Cox, Ms. Cox's husband, see id. at 227; Nancy Wilson, Vice President of Human Resources, see id. at 239-40, 271-72; Les Oelke, Vice President of Consumer Lending, see id. at 395; Richard Spautz, Vice

Commission employee who investigated Ms. Cox's discrimination claim, testified that she looked for retirement inquiries as evidence of age discrimination by the Bank, and that she encouraged Ms. Cox to record some of her supervisors' retirement inquiries to prove the Bank was discriminating against Ms. Cox on the basis of her age. See id. at 307-08, 317-18.

Bank employees' testimony regarding inquiries or comments about Ms. Cox's retirement served as Ms. Cox's main evidence of age discrimination, and Ms. Creger's testimony that such questions were evidence of illegal discrimination suggested to the jury that the ADEA prohibits an employer from making any inquiry into an employee's retirement plans. The fact that the jury was not instructed that reasonable retirement inquiries are permitted, and that it should consider whether inquiries regarding Ms. Cox's retirement were reasonable given the circumstances, improperly magnified the probative value of this evidence, and impaired the Bank's ability to mount an adequate defense. Moreover, we cannot conclude that as a matter of law the retirement inquiries were unreasonable, particularly since the record indicates that Ms. Cox herself sometimes raised the subject of her retirement or suggested she would leave DB&T and move from Dubuque when her husband retired. See, e.g., id. at 137 (testimony of Ms. Cox); id. at 272 (testimony of Nancy Wilson). Therefore, we find the District Court

President and Senior Consumer Lender, see id. at 414-17; Lee McDermott, Assistant Vice President and Consumer Lender, see id. at 421-23; Rita McCarthy, Assistant Vice President and Trust Officer, see id. at 448-49; Edward Everts, Senior Vice President of Operations and Retail Banking, see id. at 483-85; Kenneth Erickson, Senior Vice President of Commercial Lending, see id. at 521; Kenneth Majerus, Assistant Vice President, see id. at 544, 547; and Lisa Stevenson, Retail Sales Coordinator, see id. at 610. Bank titles reflect the witnesses' positions as of November 1, 1994. See Pl.'s Ex. #23 (response to interrogatory #10).

abused its discretion when it rejected the Bank's request for an instruction regarding retirement inquiries, and we reverse and remand the case for a new trial.

IV.

Because this case will be remanded, we review DB&T's claim that the District Court erred when awarded front pay and improperly calculated the front-pay award to provide guidance to the District Court should it need to revisit this question after a second trial. Front pay is an equitable remedy "that in limited circumstances may be awarded in lieu of reinstatement, as where there is such hostility between the parties that a productive and amicable working relationship would be impossible." Denesha v. Farmers Ins. Exch., Inc., No. 97-4373, slip op. at 14 (8th Cir. Nov. 3, 1998) (internal citations and quotations omitted). The amount of front pay awarded is also an equitable matter to be determined at the discretion of the district court. See id. We review a district court's rulings on front pay for abuse of discretion. See id.

The Bank argues that the District Court erred when it based its decision to award front pay in lieu of reinstatement on animosity between Ms. Cox and her supervisor, Lisa Stevenson, without finding this animosity arose from a discriminatory animus by Ms. Stevenson. See Appellant's Brief 26. However, before awarding front pay in lieu of reinstatement, a district court is required only to find that the animosity is so extreme that it makes an amicable and productive work relationship impossible, not that the animosity arises from some discriminatory animus. See, e.g., Brooks v. Woodline Motor Freight, Inc., 852 F.2d 1061, 1066 (8th Cir. 1988) (refusing to order reinstatement because of the employer's hostility and attacks on the plaintiff's honesty, motives, and job performance); Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1553 (10th Cir. 1988) (refusing to order reinstatement in part because "there were relatively few employees" and the plaintiff's position involved "close contact with supervisors"); Whittlesey v. Union Carbide Corp., 742 F.2d 724, 729 (2d Cir. 1984) (upholding a front-pay award after concluding tensions between the parties would

prevent the plaintiff from adequately performing his duty as the defendant company's chief labor counsel). The District Court, after presiding at trial and hearing all the testimony, found there was "extreme animosity" between Ms. Cox and Ms. Stevenson, and that "the events of the past would make it very difficult [for Ms. Cox] to be in a close relationship with Ms. Stevenson." Cox, No. C96-1004, slip op. at 7. The District Court decided this animosity made reinstatement inappropriate. See id. After reviewing the record, we do not find the District Court abused its discretion when it determined Ms. Cox should receive front pay in lieu of reinstatement.

Finally, DB&T argues the District Court improperly calculated the amount of front pay it should award. The District Court determined Ms. Cox should receive her final salary at the bank, $33,000 per year, minus the $7000 Ms. Cox indicated she was earning in her new employment, or $26,000 per year. See Cox, No. C96-1004, slip op. at 7. The District Court then determined this front pay should be awarded for three years, and discounted the resulting amount (three times $26,000, or $78,000) to a present value of $69,498.31. See id. at 7-8.

The Bank argues the District Court should not have based its award on her loan officer salary of $33,000, because DB&T had converted all loan officers into financial service counselors and reduced their salary to no more than $21,000 per year, plus benefits and commissions. See Appellant's Brief at 29. The Bank also claims Ms. Cox in her Motion for Front Pay conceded the proper base salary for front-pay calculations was a financial service counselor's salary. Ms. Cox did not respond to this argument on appeal, and DB&T did not supply this Court with a copy of the referenced Front Pay Motion. Because we do not need to resolve this issue, we merely note that the District Court may need to consider it on remand.

V.

For the reasons stated, the judgment of the District Court is reversed and the case is remanded for a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.