# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 98-1628

————————

William L. Montgomery,       *
                *
      Appellant,     *
                *   Appeal from the United States
    v.             *   District Court for the
                *   Northern District of Iowa.
John Deere & Company,     *
                *
      Appellee.     *

————————

Submitted:  November 17, 1998

Filed:  February 26, 1999

————————

Before BEAM and LAY, Circuit Judges, and SIPPEL,[1] District Judge.

————————

BEAM, Circuit Judge.

  William L. Montgomery appeals from the magistrate judge's grant of summary judgment[2] in favor of his former employer, John Deere & Company (Deere).

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

[2]The case was tried by a United States Magistrate Judge, by consent of the parties.  The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa, presiding.

Montgomery alleges that Deere discharged him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq., the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., the disability, age, and race provisions of the Iowa Civil Rights Act (ICRA), Iowa Code §§ 216.1 et seq.,[3] and Iowa public policy. The magistrate judge granted Deere's motion for summary judgment on all counts. We affirm.

## I.    BACKGROUND

Montgomery, who is part Cherokee Indian, began to work for Deere in June of 1966. During Montgomery's employment with Deere, he held various titles and performed numerous job functions. In 1973, he was transferred to Deere's foundry in Waterloo, Iowa. In approximately 1980, Montgomery was diagnosed as suffering from narcolepsy.[4] In 1989, Montgomery was assigned to work in the foundry's safety department under the direct supervision of Ronald Parr. In the safety department, Montgomery was responsible for administering the company's Right to Know program, its Confined Spaces program, and other tasks associated with industrial hygiene and safety.

In 1992, Montgomery was reassigned to the environmental compliance area under the supervision of Randy McDougall. Prior to that time, Montgomery had never had any involvement in environmental compliance activities or projects. His

---

[3]The discrimination claims alleged under the Iowa Civil Rights Act are analyzed in the same manner as their federal law counterparts. See Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997).

[4]Narcolepsy is a condition characterized by recurrent, uncontrollable, brief episodes of sleep. See Dorland's Illustrated Medical Dictionary 1101 (28th ed. 1994).

chief duties in his new position were preparation of monthly discharge monitoring reports for submission to the Iowa Department of Natural Resources (IDNR reports) and the City of Waterloo, weekly site compliance and storm water pollution prevention inspections, and preparation of monthly reports of these inspections. Montgomery also retained some of the job responsibilities he performed in the safety division. After numerous incidents of alleged deficiencies and tardiness in preparation of the IDNR reports and other tasks, Montgomery was discharged from his employment in August 1994. At the time of his discharge, Montgomery was fifty-two years old and held the job title of senior engineer analyst.

In essence, Deere claims that Montgomery was discharged because of his persistent poor work performance, beginning at least in 1993 until his eventual discharge in August of 1994. Montgomery contends that these allegations are false and that instead, his discharge was motivated by discrimination.

## II.    DISCUSSION

We review the grant of summary judgment de novo, applying the same standards as the district court. See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1331 (8th Cir. 1996). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995). At oral argument, Montgomery conceded that his strongest claims were those based on age discrimination, ERISA, and wrongful discharge in violation of Iowa public policy. We agree and accordingly limit discussion to those claims.

**A.  Age Discrimination**

It is unlawful under the ADEA for an employer to discharge an employee because of his or her age.  See 29 U.S.C. § 623(a)(1).  The protected age group consists of those age forty or older.  See id. § 631(a).  Under the ADEA, a plaintiff may demonstrate age discrimination by either direct or indirect evidence.  See Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991).  On appeal, both parties argue that this is an indirect evidence case, and we treat it accordingly.  To avoid summary judgment in such a case, a plaintiff must establish a prima facie case of age discrimination by producing evidence that:  (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; and (4) he was replaced by a younger person. See Ziegler v. Beverly Enterprises-Minnesota, Inc., 133 F.3d 671, 675 (8th Cir. 1998).  If a prima facie showing is made, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge.  See Rothmeier, 85 F.3d at 1332.  If the employer meets that burden, the plaintiff may avoid summary judgment only if he presents evidence that, in its entirety, "(1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision."  Id. at 1336-37.

We are skeptical that Montgomery has, in fact, established a prima facie case of age discrimination in terms of showing that he was adequately performing the duties of his job.  Even assuming that Montgomery did establish a prima facie case, we find that he did not present evidence sufficient to support a finding that Deere's declared reason for firing him was a pretext for age discrimination.

Montgomery argues that Deere embarked upon a plan or scheme to terminate him because of his age by setting him up to fail.  In support of this theory, he points to the following facts:  (1) he was transferred from a job in the safety division for

-4-

which he was highly qualified to a job in the environmental compliance area, for which he had little experience; (2) he was repeatedly asked when he was going to retire or if he would retire if a special early retirement program was offered to him; (3) after he refused an offer of early retirement in June of 1993, his job assignments and responsibilities dramatically increased to the point of inevitable failure; (4) during his twenty-eight year employment with Deere, he had never received an unsatisfactory review; and (5) he was continually referred to as the "old fart" by McDougall and others. After carefully reviewing the record, we conclude that these facts alone do not support a finding of age discrimination.

First, the record does not support Montgomery's allegation that Deere transferred him to the environmental compliance area in order to make him fail. The record shows that Montgomery was transferred to the environmental compliance area because that area was short-staffed and management felt that he was qualified for the new post. Montgomery was trained regarding his new work assignments and was told to seek assistance if he was having any difficulties or confusion regarding his tasks. Deere gave him over a year and a half to learn the duties of his new position before discharging him for unsatisfactory performance in August of 1994.

Second, the fact that Montgomery was regularly offered early retirement does not by itself violate the ADEA. We have stated before that an employer may make reasonable inquiries into the retirement plans of its employees and that a plaintiff should not be able to rely on those inquiries to prove intentional discrimination. See Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 497 (8th Cir. 1998). However, retirement inquiries can sometimes be so unnecessary and excessive as to constitute evidence of discriminatory harassment. See id. Montgomery has not presented evidence that such was the case here.

Third, the record does not support Montgomery's claim that Deere dramatically increased his job duties following his refusal to accept an early retirement offer in

June 1993. McDougall did send Montgomery a letter in August 1993, informing him that he must temporarily assume some additional tasks. However, the record reveals that this increase stemmed from the reassignment of duties that belonged to a departing employee, and that McDougall evenly split the increased workload between himself and Montgomery. Furthermore, in July 1994, about a month prior to Montgomery's discharge, McDougall actually relieved Montgomery of many of his tasks by reassigning them to others and leaving Montgomery with only five duties including the preparation of the IDNR reports.[5]

Fourth, Montgomery claims that throughout his employment with Deere he never received an unsatisfactory review. However, the record shows that a May 1993 evaluation of Montgomery's work ranked him between low and medium in the categories of "responsiveness to job demands," "personal efficiency," and "personal communication skills." The report further noted that Montgomery was not completing tasks on time; frequently talked to others about non-work related activities; was easily distracted; did not make up missed work time; and was wordy and disjointed in his verbal and written communications. Furthermore, a review of Montgomery's annual evaluations from 1991 to 1993 reveals a progressive decline in his work performance.

Finally, Montgomery asks us to draw an inference of age discrimination from the fact that he was frequently referred to as the "old fart" by McDougall and others.

---

[5]Montgomery argues at length that Deere's allegation that he submitted inaccurate IDNR reports is false because his only task was to enter raw data, and that, in fact, McDougall blamed Montgomery for the errors in order to cover up his own mistakes. Even if we assumed this to be true, the record shows that Montgomery had numerous other work deficiencies unrelated to the IDNR reports. He was delinquent in completing many other projects, failed to maintain up-to-date files, improperly documented samples that he collected, and submitted work containing spelling and grammatical errors.

We held in Ryther v. KARE 11, 108 F.3d 832, 842-44 (8th Cir. 1997), cert. denied, 117 S. Ct. 2510 (1997), a pretext case, that co-employees' statements that the plaintiff was an "old fart," "old man," and "too old to be on the air," along with other evidence, raised a reasonable inference of age discrimination. However, as noted, Montgomery's prima facie case is, at best, weak, and he has produced no other evidence of pretext. Cf. id. at 844 (stating that "plaintiff produced overwhelming evidence as to the elements of a prima facie case, and strong evidence of pretext"). Thus, we find that in this instance, these comments, standing alone, do not provide a sufficient basis for an inference of age discrimination.

In sum, we think the record is devoid of any evidence that Montgomery's discharge was motivated by age-based animus.

## B.    ERISA

Montgomery also claims that Deere discharged him in violation of the Employment Retirement Income Security Act (ERISA) because he refused to elect early retirement. His evidence boils down to the following facts: (1) in June of 1993, he declined Deere's offer of early retirement; (2) after that, Deere substantially increased his duties in an effort to set him up to fail; and (3) approximately a year later, in August 1994, Deere terminated Montgomery's employment, causing his retirement benefits to be substantially reduced from what they would have been if he had been allowed to continue his employment until age sixty-five.

The same burden-shifting framework that applied to Montgomery's ADEA claim also applies to his ERISA claim. See Rath v. Selection Research, Inc., 978 F.2d 1087, 1089 (8th Cir. 1992). If Montgomery makes out a prima facie case of retaliation, Deere must articulate a legitimate, nondiscriminatory reason for its actions. See id. If Deere meets that burden, Montgomery must prove that the proffered reason is pretextual. See id. at 1089-90. To make out a prima facie case

of ERISA retaliation, Montgomery must prove that: (1) he participated in a statutorily protected activity; (2) that an adverse employment action was taken against him; and (3) that a causal connection existed between the two. See id. at 1090.

Montgomery has not presented evidence sufficient to establish a prima facie case. His evidence of causal connection is that following his refusal of early retirement, Deere increased his duties to the point of inevitable failure. As we noted earlier in discussing the ADEA claim, the record does not support such a finding. Furthermore, we note that Montgomery's discharge in August 1994 occurred over a year after his refusal to accept early retirement in June 1993. Cf. id. (stating that it was doubtful that plaintiff had established a prima facie case when only evidence of causal connection was that his termination came about six months after employer reprimanded him for questioning proposed changes in employee stock ownership plans). Even assuming that Montgomery established a prima facie case, we find that he has failed to show that Deere's justification for his termination was pretextual. Montgomery argues his evidence of pretext is bolstered by the same facts alleged in his other discrimination claims. Because we find no merit in any of his other claims, we reject this argument.

## C.    Wrongful Discharge

Finally, Montgomery contends that Deere wrongfully discharged him in violation of Iowa public policy in retaliation for whistle-blowing. Specifically, Montgomery claims that Deere discharged him because of his knowledge of certain allegedly improper, possibly illegal, environmental practices taking place at the foundry.

This claim is without merit. Other than his conclusory allegation, Montgomery provides no other facts showing that Deere's actions were in retaliation for any whistle-blowing activity. Indeed, Montgomery's only evidence in support of his

claim is that he has intimate knowledge of certain improper activities at the foundry. He never asserts that he reported his concerns to his supervisors or that he ever went outside or threatened to go outside the company with this information.

### D. Other Claims

We have considered Montgomery's other arguments and have carefully reviewed the record. Accordingly, we affirm the district court's grant of summary judgment to Deere on the ADA and Title VII claims and the corresponding state law claims.

## III. CONCLUSION

We thus conclude that the district court correctly granted Deere summary judgment on all of Montgomery's claims, and we affirm.

LAY, Circuit Judge, concurring.

I concur in the majority opinion but for different reasons.

Preliminarily, I think it important to point out my basic disagreement with the application of the McDonnell Douglas burden-shifting analysis to the ADA claim. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Both parties in this case used the McDonnell Douglas analysis to argue for and against the plaintiff's discrimination claim under the ADA. This was not the proper analysis, however, because the claim the plaintiff asserts is not a disparate treatment claim.[6]

---

[6]If a claimant under the ADA were making a disparate treatment claim, such as an employer placing a greater burden on disabled workers than on other employees, then the McDonnell Douglas burden-shifting analysis would apply. Cf. Price v. S-B Power Tool, 75 F.3d 362 (8th Cir. 1996), cert. denied, 117 S. Ct. 274

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability . . ." 42 U.S.C. § 12112(a). Under the ADA, the term "discriminate" includes:

> (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]; or
>
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of [the employer] to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(5)(A)-(B). In most ADA cases, therefore, the focus is on whether the employer should have reasonably accommodated the employee's disability but did not. In such cases, as here, the McDonnell Douglas disparate treatment analysis is inappropriate. See Bultemeyer v. Fort Wayne Community Schs., 100 F.3d 1281, 1283-84 (7th Cir. 1996); Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1183 (6th Cir. 1996); see also Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995) (stating that once the plaintiff makes a facial showing that reasonable accommodation is possible, the burden of production shifts to the employer to show that it is unable to accommodate the employee); Wood v. Omaha Sch. Dist., 985 F.2d 437, 439 (8th Cir. 1993) (stating that under the Rehabilitation Act a plaintiff need only make a facial showing that reasonable accommodation is possible and finding that the plaintiff met that burden by proposing certain accommodations); Arneson v. Heckler, 879 F.2d 393, 396 (8th Cir. 1989) (reversing dismissal of Rehabilitation Act claim because the plaintiff was "only required to

_____

(U.S. Oct. 7, 1996) (No. 95-1782). However, no such claim is made here.

provide evidence sufficient to make 'at least a facial showing that reasonable accommodation is possible'" before the burden shifts to the employer to prove it is unable to make the accommodation) (citation omitted); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285-87 (11th Cir. 1997) (holding that a plaintiff can show they were unlawfully discriminated against when an employer does not reasonably accommodate their disability, unless the employer can show such an accommodation would pose an undue hardship); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (applying the McDonnell Douglas analysis to a plaintiff's disparate treatment claim under the ADA, but finding that a reasonable accommodation claim in the same complaint was subject to its own specialized legal standards).

Under the appropriate reasonable accommodation analysis, the plaintiff's ADA claim must fail.  The plaintiff does not demonstrate that his work inadequacies (which he denies in setting forth the prima facie case for age discrimination) are related to his narcolepsy or that the defendant failed to reasonably accommodate him.  In fact, the record shows that John Deere did accommodate the plaintiff.  For example, they allowed the plaintiff to take naps during the day and made other adjustments in his work schedule.  The plaintiff even testified that John Deere willingly provided him with any assistance he, or his doctor, requested regarding his medical condition.

With respect to his age discrimination claim, I feel the plaintiff created a factual dispute as to his prima facie case.  The plaintiff is, after all, entitled to all favorable inferences as the nonmoving party.  The plaintiff, however, did not prove pretext.  As this court points out in Ryther v. KARE 11, 108 F.3d 832 (8th Cir. 1997), cert. denied, 117 S. Ct. 2510 (U.S. Jun. 27, 1997) (No. 96-1571), a plaintiff must show pretext by evidence, viewed in conjunction with the elements of the prima facie case, which permits an inference of discrimination.  I agree with the majority that there was no evidence to permit such an inference in this case and so his age discrimination claim must fail.

-11-

Evidence of pretext may not include a reason for termination which is inconsistent with such inference. See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1337 (8th Cir. 1996) (affirming summary judgment in an age discrimination case where there was evidence that the plaintiff was fired for confronting his employers about SEC violations). Although a plaintiff may plead alternative and even inconsistent claims, he may not assert a reason for his discharge which may well prove pretext, but is nonetheless inconsistent with the inference of discrimination. Here, in an attempt to verify his retaliatory discharge claim, the plaintiff asserts that his knowledge of the company's misconduct made him a potential "whistle blower" and, therefore, the company's reason for discharge was pretextual. If we accept the plaintiff's assertions as true, his evidence of pretext defeats his claim of age discrimination because it negates intent, showing that the plaintiff thought he was fired for a reason other than age. Furthermore, the plaintiff's assertion that he had knowledge of misconduct does not salvage his retaliation claim under the facts of this case. There is no proof to establish a reasonable inference that the employer knew that the plaintiff had evidence of misconduct and discharged him because he might reveal this evidence to the authorities.

I can fully understand plaintiff's frustration. He was a loyal employee who performed his job for over twenty-eight years. Why was he suddenly discharged as he neared retirement age? Unsure of the reason, his lawyer obviously "shot-gunned" his claims–not knowing which one would work. In other words, the plaintiff "protests too much." The plaintiff's multiplicity of claims against the defendant backfired, not only weakening but defeating some of his legitimate claims. Although the timing of the discharge seems questionable, there is not enough evidence to support any of the plaintiff's claims. The result here leaves the plaintiff feeling an injustice has been done and, although I lack a legal basis for saying so, I am not so sure that I disagree.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.