# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-2413
No. 01-2551

_____

|  |  |  |
|---|---|---|
| Larry T. Tadlock, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Donald E. Powell, Chairman, | * | |
| Federal Deposit Insurance | * | |
| Corporation, | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |
| | * | |

_____

Submitted: March 14, 2002

Filed: May 30, 2002

_____

Before McMILLIAN, HEANEY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Donald E. Powell,[1] Chairman of the Federal Deposit Insurance Corporation (FDIC), appeals from a bench trial verdict in favor of Larry Tadlock (Tadlock), an FDIC employee, on his age discrimination claim. The district court[2] entered final judgment, awarding Tadlock back pay and reinstatement, but denying him prejudgment interest.

On appeal, the FDIC argues the district court clearly erred in finding age discrimination and constructive discharge. Tadlock cross appeals, contending the district court abused its discretion in ordering reinstatement, in finding it lacked jurisdiction to subpoena a party to trial, and in interpreting Rule 45 of the Federal Rules of Civil Procedure. We affirm.

I.    BACKGROUND

Larry Tadlock was a career employee with the FDIC. In 1967 at the age of twenty-six, he began working for the FDIC in the Division of Supervision as an Assistant Bank Examiner Trainee. While working in the Division of Supervision, Tadlock received numerous promotions and was assigned to duty stations in Tennessee and Mississippi.

In 1986 the FDIC promoted Tadlock to a Grade 14 position of Field Office Supervisor (FOS) in Little Rock, Arkansas. The Little Rock Field Office supervises

---

[1]Donald E. Powell is substituted for Donna A. Tanoue, former Chairman of the Federal Deposit Insurance Company, as appellant/cross-appellee in this action pursuant to Fed. R. App. P. 43(c)(2).

[2]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

the bank examination process and oversees Arkansas banks in the Memphis region.[3] As a FOS, Tadlock was a first-line supervisor of twenty-five bank examiners and support personnel.

In descending order, Tadlock had three line supervisors: Cottrell Webster (Webster), the Regional Director; Stephen Race (Race), the Deputy Regional Director; and Patricia Lenfert (Lenfert), the Assistant Regional Director. For nearly thirty years, Tadlock received favorable performance evaluations from his line supervisors and never received disciplinary action. In late 1996 and early 1997, Tadlock experienced problems with two bank examiners under his supervision. One of the bank examiners filed a grievance against Tadlock. Another employee supervised by Tadlock also filed a grievance against him. Nicholas Ketcha (Ketcha), Director of the Division of Supervision, forwarded the employee grievances against Tadlock to the FDIC's Office of Inspector General (OIG) in Washington, D.C. The OIG declined to investigate the grievances and remanded the matters to Ketcha for resolution.

On February 27, 1997, Webster notified Tadlock in writing that the FDIC was detailing him for six weeks to the Memphis Regional Office to work in the position of Acting Assistant Regional Director (AARD).[4] According to Webster's memorandum, the six-week detail was to commence on March 31, 1997, and end on May 9, 1997. When Tadlock reported to the regional office on March 31, 1997, to begin his detail, Webster, Race, and Lenfert summoned him to a three-hour meeting in which they alleged Tadlock had exercised poor judgment, mistreated staff persons, misinterpreted promotion policy, failed to follow instructions, and played solitaire on an office computer. During the meeting Webster told Tadlock he had begun to

---

[3]The Memphis region covers the states of Arkansas, Louisiana, Kentucky, Mississippi, and Tennessee.

[4]FOSs are routinely given six-week details in Memphis to serve as AARDs.

question Tadlock's judgment commencing in December 1996. Tadlock's supervisors also discussed numerous decisions Tadlock made during his tenure at the Little Rock Field Office with which Webster, Race and Lenfert disagreed. Lenfert observed that "in her 20 years of employment she ha[d] not seen or heard of a more discontented field office as Little Rock." Afterwards, Lenfert wrote a memorandum memorializing the meeting. Following the meeting Tadlock received no discipline for his alleged misconduct.

When Tadlock's detail in Memphis was completed, Webster converted Tadlock's AARD position to Acting Case Manager (ACM). Webster told Tadlock he would have the ACM detail in Memphis for six additional weeks while the OIG completed its investigation of the allegations against him. Tadlock contested the extension of his detail in Memphis by filing a grievance and twice appealing its denial. After Tadlock completed his second detail, Webster met again with Tadlock and said he had not decided whether to return Tadlock to his FOS position in Little Rock. Webster told Tadlock he would make a decision within two weeks. Two weeks later, Webster told Tadlock he was waiting to hear from Washington before making a decision, although Webster knew the OIG had officially declined to investigate employee grievances filed against Tadlock. Weeks later, Tadlock inquired again, and Webster told him he hoped to know something by Labor Day. After Labor Day passed, Tadlock inquired again, and Webster responded that he had no information.

In September 1997, the FOSs met in Memphis. During the meeting, Webster declared the high percentage of higher-grade white males in the forty-five to fifty-five age group presented a problem to the FDIC with respect to attracting minority employees. Reference was made that the FDIC employees should reflect the "Face of America." On October 3, 1997, Tadlock filed an Equal Employment Opportunity (EEO) complaint alleging race and sex discrimination based on the indefinite

4

extension of his detail in the Memphis Regional Office and harassment by management in retaliation for unsubstantiated complaints filed by coworkers.

By letter dated December 12, 1997, Webster informed Tadlock that he no longer held the FOS position in Little Rock. Instead, Webster's letter informed Tadlock that he was being permanently reassigned to the position of Case Manager (CM), Grade 14, in the Memphis Regional Office. Webster's letter offered Tadlock three choices: accept the directed reassignment, retire, or be involuntarily separated from service.

At the time Tadlock received the letter, he was fifty-six years old. Twice before, Tadlock had declined management requests to transfer voluntarily to the CM position. The directed reassignment to the CM position stripped Tadlock of his job title and supervisory responsibilities. On February 6, 1998, Tadlock filed a second EEO complaint alleging race and sex discrimination based on his involuntary reassignment and a low performance appraisal. In his second EEO complaint, Tadlock sought reinstatement to the FOS position in the Little Rock Field Office.

Because Tadlock believed his reassignment was a demotion and an attempt by management to force him to resign, he declined the reassignment and retired effective February 14, 1998. In April 1998 Webster selected a male under age forty to replace Tadlock as the FOS in the Little Rock Field Office. In May 1998 Tadlock filed a third EEO complaint alleging age discrimination on the basis of constructive discharge and requesting reinstatement to the FOS position in the Little Rock Field Office.

The case was tried to the bench. The district court found the FDIC had discriminated against Tadlock on the basis of age by demoting and constructively discharging him. However, the district court concluded Tadlock had not proved his retaliation claim. The court ordered the FDIC to reinstate Tadlock either to the FOS

5

position or to a comparable position in the Little Rock Field Office. The district court also ordered back pay. The court did not award prejudgment interest, concluding the United States was immune from paying prejudgment interest.

## II.    DISCUSSION
### A.    Standard of Review

In reviewing a district court's order entering judgment after a bench trial, we review the court's factual findings for clear error and its legal conclusions de novo. Fed. R. Civ. P. 52(a); Speer v. City of Wynne, Ark., 276 F.3d 980, 984-85 (8th Cir. 2002). "Under this standard, we overturn a factual finding only if it is not supported by substantial evidence in the record, if the finding is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made." Estate of Davis v. Delo, 115 F.3d 1388, 1393-94 (8th Cir. 1997). We give due regard to the opportunity of the district court to judge the credibility of the witnesses. Id.; Fed. R. Civ. P. 52(a).

A factual finding supported by substantial evidence on the record is not clearly erroneous. Akeyo v. O'Hanlon, 75 F.3d 370, 373 (8th Cir. 1996). A district court's choice between two permissible views of evidence cannot be clearly erroneous. Estate of Davis, 115 F.3d at 1393-94; Hylton v. John Deere Co., 802 F.2d 1011, 1014 (8th Cir. 1986). When we review a judgment entered on a verdict favorable to a plaintiff in an age discrimination case, the McDonnell Douglas presumptions fade away, and we must decide whether the record supports the ultimate findings of discrimination. Rademaker v. Nebraska, 906 F.2d 1309, 1311 (8th Cir. 1990).

### B.    Adverse Employment Action

To establish a prima facie case of discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., Tadlock must show: (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he suffered an adverse employment action;

6

and (4) he was replaced by a younger person. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Tadlock was a member of a protected age group, was performing his job satisfactorily and was replaced by a younger person.

### 1. Demotion

The FDIC argues the district court erred in finding age discrimination in the absence of sufficient evidence showing Tadlock suffered an adverse employment action. In reassigning Tadlock to a non-supervisory CM position, the FDIC claims Tadlock suffered no materially adverse change in working conditions. Because Tadlock maintained the same grade, salary, and benefits, the FDIC contends his directed reassignment did not constitute a demotion.

In Fisher, we held a transfer constitutes an adverse employment action "when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary or benefits." Id. See also Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 362 (8th Cir. 1997). Although the district court found the CM position was the same grade as the FOS position, it found the evidence also established the CM position does not entail supervising employees and is a less prestigious position as evidenced by the fact that the Memphis Regional Office has more CM positions than FOS positions. Webster's trial testimony established that within the same grade Webster regarded some positions as promotions and other positions as demotions. After reviewing the record, we conclude the district court's findings of adverse action are supported by substantial evidence and are not clearly erroneous.

### 2. Constructive Discharge

Constructive discharge occurs "when an employer intentionally creates a work environment so intolerable as to compel a reasonable employee to quit, and the employee does in fact quit." Tork v. St. Luke's Hosp., 181 F.3d 918, 919 (8th Cir. 1999). "The conduct complained of must have been severe or pervasive enough to

create an objectively hostile or abusive work environment, and additionally the plaintiff must subjectively perceive the environment to be abusive." Johnson v. Runyon, 137 F.3d 1081, 1083 (8th Cir. 1998) (internal quotations omitted). A plaintiff may satisfy this intent requirement by showing the intolerable situation created by the employer was such that the employer could reasonably foresee that the employee would quit. Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 932 (8th Cir. 2000).

The FDIC contends the district court erred in finding Tadlock was constructively discharged from his employment. The FDIC argues the trial record is devoid of evidence that the nine months Tadlock waited in Memphis for the FDIC to make a decision presented such an intolerable working situation that a reasonable person would have had no choice but to quit. In analyzing the trial evidence establishing constructive discharge, the district court found:

> that, from March 31, 1997, when Tadlock was summoned to the meeting in which he was given a list of questionable concerns, until the time in December when he was told of the permanent reassignment, Tadlock repeatedly communicated to Webster his desire to return to Little Rock and repeatedly asked when he might return; that Webster knew that Tadlock was anxious; that Webster knew he would never permit Tadlock to return; that Ketcha asked Tadlock voluntarily to take the case manager job on a permanent basis; that Tadlock refused to do so; and that it was reasonably foreseeable that the permanent transfer to the case manager position would result in Tadlock's leaving the agency.

Applying an objective standard to these factual findings, the district court further found "a longtime supervisory employee, who was strung along like this and then told he could not return to his position, would find this intolerable." Having reviewed the trial record, we find substantial evidence supporting the court's finding of constructive discharge and thus find no clear error.

8

## C.    Reinstatement

On his cross appeal, Tadlock argues the district court abused its discretion by ordering reinstatement to a comparable position in lieu of front pay. Tadlock contends reinstatement was not an appropriate remedy because of the unavailability of the FOS position, Webster's absence of trust and confidence in Tadlock, and antagonism between the parties.

Reinstatement is the typical remedy for unlawful discrimination in employment. McIntosh v. Jones Truck Lines, Inc., 767 F.2d 433, 435 (8th Cir. 1985). However, a court may, in limited instances, award front pay in lieu of reinstatement. Cox v. Dubuque Bank & Trust Co., 163 F.3d 492, 498 (8th Cir. 1998). Before awarding front pay, a district court must find "the animosity is so extreme that it makes an amicable and productive work relationship impossible." Id.

In considering whether reinstatement was a viable remedy, the district court specifically found that "while plaintiff was discharged illegally, defendant's actions in this case evidenced poor judgment more than hostility or animus toward plaintiff." Our review of the record reflects no evidence of extreme animosity that would preclude "an amicable and productive work relationship." See id. Moreover, we note Tadlock requested reinstatement in his EEO charges, his complaint, and a post-trial motion. Accordingly, we conclude the district court did not abuse its discretion in awarding Tadlock the remedy he requested.

When the district court entered its reinstatement order, Tadlock's FOS position was not open. To comply with the court's order to reinstate Tadlock to a comparable position, the FDIC created a Grade 14 Supervisory Examiner position. Shortly after the judgment was entered, Tadlock's former FOS position became vacant, and Tadlock filed a Rule 59(e) motion to amend judgment. The district court denied the motion as untimely. Thereafter, Tadlock filed a Rule 60(b) motion to amend judgment, requesting the court to reinstate him to the FOS position. Although the

9

district judge indicated she was inclined to grant Tadlock's motion, the parties had filed their notices of appeal and cross appeal, and the district court was without jurisdiction to modify its judgment.

On appeal, we recognize the need in selected cases to modify the relief granted to permit the prevailing party the fullest relief appropriate. See King v. Staley, 849 F.2d 1143, 1144 (8th Cir. 1988). "A district court is obligated to grant a plaintiff who has been discriminated against on account of his [age] . . . the most complete relief possible." Briseno v. Cent. Tech. Cmty. Coll. Area, 739 F.2d 344, 347 (8th Cir. 1984). Although tailoring the relief lies within the equitable discretion of the trial court, we may modify the trial court's orders "to ensure that the fullest relief appropriate is afforded a deserving plaintiff." Maschka v. Genuine Parts Co., 122 F.3d 566, 572-73 (8th Cir. 1997); (citing Ingram v. Missouri Pac. R.R. Co., 897 F.2d 1450, 1456 (8th Cir. 1990)). Consequently, we affirm the judgment but remand the case to the district court to permit reconsideration of the appropriate reinstatement award, including the possibility of modifying the judgment to reinstate Tadlock to his former FOS position in the Little Rock Field Office.

### D.     Rule 45

Tadlock's final argument is that the district court erred in quashing his subpoena duces tecum to Donna A. Tanoue, former Chairman of the FDIC, and, in doing so, misinterpreted Rule 45 of the Federal Rules of Civil Procedure. Because we affirm the district court's finding of age discrimination, we find it unnecessary to address these alleged errors.

### III.     CONCLUSION

For the foregoing reasons, we affirm the district court and remand the case for further proceedings consistent with this opinion.

10

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT