# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 05-3615

————————

| | | |
|---|---|---|
| Lee Smith, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| International Paper Company, | * | |
| | * | |
| Appellee. | * | |

————————

Submitted: October 17, 2007
Filed: April 4, 2008

————————

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

————————

GRUENDER, Circuit Judge.

Lee Smith appeals the district court's[1] grant of International Paper Company's ("IP") motion for summary judgment on his claim that IP retaliated against him by terminating his employment because he complained about his supervisor's harassment. We affirm.

—————————

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

# I. BACKGROUND

Lee Smith, an African-American man, worked for IP from August 23, 1999, to January 6, 2003. George Boyette, a Caucasian man, began supervising Smith, then a big chipper operator, in August 2001. Smith claimed that Boyette regularly yelled and cursed at him during his employment. On September 3, 2001, Boyette disqualified Smith from his big chipper operator position because Smith failed to follow the proper lockout procedure, a safety procedure designed to prevent employee injuries. That night, Smith confronted Boyette and claimed that Boyette was prejudiced. Boyette responded, "I'm not prejudiced, I don't discriminate; there were several whites I would put on the same ship as you." Smith interpreted this statement as a racial comment.

Boyette also supervised Smith as a Bobcat trainee and operator from October 2001 until Smith's employment was terminated on January 6, 2003. On October 30, 2001, Smith attended a peer review training class. In response to a manager's question regarding what employees did not like about their jobs, Smith complained that Boyette "on a nightly basis . . . was cussing me, hollering, yelling at me." The manager stated that he would talk with Smith about the complaint after the meeting. IP's human resource managers then discussed Boyette's behavior with Smith, and Smith reiterated that Boyette was "hollering and cussing at me" and added that Boyette was "accusing me of doing damage to the Bobcat that I was not doing at the time." The human resource managers stated that they would investigate the complaint. One of those human resource managers observed Boyette on the job for a period of time after Smith's complaint. Some time shortly after Smith complained to IP's managers, Boyette approached Smith and asked if Smith had complained about Boyette's harassment. Smith admitted that he had. According to Smith, Boyette responded, "I'm going to get you."

Smith received a series of disciplinary violations over the next fourteen months that ultimately led to the termination of his employment. IP has a four-step disciplinary policy: (1) verbal warning reduced to writing, (2) written warning, (3) final written warning, and (4) discharge. IP policy provides for discharge of an employee who receives discipline within a year of receiving a final written warning. IP policy also permits an employee to contest any disciplinary action by appealing to management. Smith received all four steps of discipline before discharge without formally contesting any of them.

The first step, a verbal warning, occurred on November 20, 2001. Smith damaged a dump truck and failed to check the full extent of damages. Brian Hendrix, an IP supervisor, issued the warning, and Boyette signed it. Smith admitted to the incident and signed the warning.

Between the first and second disciplinary steps, Boyette and Smith discussed an excessively long break Smith took on January 7, 2002. Boyette recorded the details of the incident in a report called a "written conversation," but he did not proceed to discipline Smith under the second step. Smith admitted to the incident but claimed that he was justified in taking a longer break because he had foregone an earlier break. He was asked to sign the written conversation and refused.

The second step, a written warning, occurred on January 18, 2002. Smith failed to report immediately to his supervisor damage to the Bobcat he was operating. Smith observed damage to the Bobcat's door at the beginning of his shift and a mashed exhaust pipe about ten minutes later. Smith asserts that he then went to report the incident to Boyette but could not find him. Smith took the Bobcat to the repair shop and then contacted Boyette. Boyette issued a written warning for violating IP's rule requiring reporting of accidents: "Any work-related accident or injury/illness, no matter how minor, must be reported to your Supervisor immediately." Smith refused to sign the warning because he claimed he did not observe an accident and, therefore, did not violate the rule.

The third step, a final written warning, occurred on February 23, 2002. Boyette observed Smith sleeping on the job and called over another supervisor to verify that Smith was asleep. Smith admitted he may have fallen asleep. Boyette issued a final written warning, which Smith signed.

The fourth step occurred more than ten months later, on December 30, 2002. On December 28, 2002, Smith observed a broken hinge on the Bobcat but did not report the damage. Boyette returned from vacation and confronted Smith about the damage on December 30, 2002. Boyette reported that Smith was tired of telling Boyette what was wrong with the Bobcat because something was always wrong with the Bobcat. Smith claimed that Boyette did not care about his previous reports of damage. Smith also contended that IP's rule requiring that accidents be reported, the same rule Smith violated on January 18, 2002, did not require reporting "damage," only "accident or injury."

On December 30, 2002, Boyette recommended to IP management that Smith be discharged. Three members of IP's management team, who had no knowledge of Smith's September 3, 2001 confrontation with Boyette or Smith's October 30, 2001 complaint to IP's human resource managers about Boyette's harassment, reviewed Smith's disciplinary history and terminated Smith's employment on January 6, 2003. Smith refused to sign the discharge report.

Smith brought suit against IP under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., claiming racial discrimination, hostile work environment and retaliation. IP filed a motion for summary judgment. The district court granted IP's motion for summary judgment on all claims. Smith appeals only the retaliation claim. The district court concluded that Smith failed to produce sufficient evidence for a reasonable jury to conclude that his discharge was causally linked to protected conduct under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). On appeal, Smith asserts that Boyette's response of "I'm going to get you" upon learning of

-4-

Smith's October 30, 2001 complaint to IP's human resource managers about Boyette's harassment is sufficient evidence to survive IP's summary judgment motion. He first argues that this statement constitutes direct evidence and that the mixed-motives analysis set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), applies. He contends that the statement reflects a retaliatory intent, which Boyette then implemented by disciplining and discharging him pursuant to IP's four-step disciplinary process over the next fourteen months. He points to the fact that he worked for twenty-six months without a disciplinary action, but after Boyette's statement he received four disciplinary steps in fourteen months and was discharged. Smith argues that even if the "I'm going to get you" statement is not direct evidence, the statement, the contrast in Smith's employment record before and after the statement, the four disciplinary steps over fourteen months, Boyette's later statement that Smith would "fire [him]self," and the minor nature of the disciplinary violations constitute sufficient evidence to create a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting framework.

## II.    DISCUSSION

"We may affirm a district court's grant of summary judgment on any basis supported by the record." *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1110 (8th Cir. 2007). We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Wells*, 469 F.3d at 700. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To establish the existence of a genuine issue of material fact, "[a] plaintiff may not merely point to unsupported self-serving allegations." *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005).

The plaintiff "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." *Id.* at 873.

To establish a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting framework, Smith must show "1) he engaged in protected conduct; 2) a reasonable employee would have found the challenged action materially adverse; and, 3) the materially adverse action was causally linked to the protected conduct." *Carrington v. City of Des Moines*, 481 F.3d 1046, 1050 (8th Cir. 2007).[2] A retaliation claim requires that the plaintiff have engaged in protected conduct, or, as the Civil Rights Act of 1964 states, "oppos[ing] any practice made an unlawful employment practice by this title." 42 U.S.C. § 2000e-3(a). An "unlawful employment practice" is discrimination on account of "race, color, religion, sex, or national origin." *Id.* § 2000e-2(a). "Conduct is not actionable under Title VII if no reasonable person could have believed the incident violated Title VII's standard." *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 835 (8th Cir. 2008).

While Smith's September 3, 2001 complaint to Boyette about his being prejudiced may well constitute protected conduct, Smith has never claimed that this complaint was the basis for IP's retaliation. Instead, both in the district court and on appeal, Smith relies solely on his October 30, 2001 complaint to IP's human resource

---

[2]Even if we were to agree that Smith submitted direct evidence of retaliatory intent, Smith would still be required to prove he engaged in protected conduct. In the direct evidence context, the plaintiff must show the existence of an illegitimate motive, retaliation on account of protected conduct. *See Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 472 (8th Cir. 1995) (employee's complaint to management about sexual harassment was predicate to analysis of whether direct evidence of retaliation existed). Because Smith is required to show that he engaged in protected conduct under 42 U.S.C. § 2000e-3(a), whether or not he presented direct evidence, and because we conclude that he has failed to present evidence sufficient to raise a material question of fact on that issue, we need not decide whether Boyette's statement constitutes direct evidence.

managers about Boyette's "harassment," which Smith characterized only as Boyette's yelling, cussing and hollering at him. *See, e.g.*, Appellant's Br. at 21 ("Boyette's threat to 'get' Smith for making a complaint to IP's Human Resources Managers shows a retaliatory motive on its face.").

Nowhere in his EEOC charge or in his pleadings in this lawsuit does Smith allege that he was retaliated against because of a complaint of racial discrimination or racial harassment to IP. With respect to his retaliation claim, Smith's EEOC charge merely states, "In October 2001, I complained about the treatment I was subjected to by my supervisor," and "I was disciplined and discharged . . . in retaliation for lodging a complaint." In his complaint filed in the district court, Smith alleged that "the evidence will show that in October 2001, I complained to management about the treatment I was subjected to by my supervisor." Smith never alleged that his October 30 complaint about the treatment he was subjected to by his supervisor involved any form of racial discrimination or racial harassment.

In his response to IP's motion for summary judgment, Smith claimed for the first time that he was "terminated in retaliation for complaining about race discrimination." The evidence, however, does not support this characterization of his October 30 complaint to IP's human resource managers. As Smith conceded at oral argument, confirmed by our review of the record, there is no evidence that his October 30 complaint referred to any harassment or discrimination based on Smith's race. The only evidence in the record on this issue is Smith's deposition, which states that Smith complained to IP's human resource managers that Boyette was "hollering and cussing at me" and "accusing me of doing damage to the Bobcat that I was not doing at the time." The October 30 complaint to IP's human resource managers about Boyette's yelling, cussing and hollering at Smith, with no reference to "race, color, . . . or national origin," does not constitute protected conduct. *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1137–38 (8th Cir. 2007) (teaching assistant's complaints to student affairs office about the administration were simply complaints about "unsavory actions" that

did not constitute complaints about unlawful employment practices); *Curd v. Hank's Disc. Fine Furniture, Inc.*, 272 F.3d 1039, 1041 (8th Cir. 2001) (e-mail concerning salesman who opened his pants and tucked in his shirt was not a complaint concerning an unlawful employment practice); *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 101 (8th Cir. 1995) (teacher's complaint about a school's desegregation plan was not made in opposition to an unlawful employment practice). "Title VII, we have said, does not set forth a general civility code for the American workplace." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 619 (8th Cir. 2007) (internal quotation marks omitted). It is not a "bad acts" statute. *Evans*, 65 F.3d at 101 (citation omitted). No reasonable person could believe that Smith's October 30 complaints about workplace civility, the only basis asserted by him, were protected under Title VII. Therefore, Smith has failed to present sufficient evidence for a reasonable jury to conclude that he engaged in protected conduct when he complained to IP's human resource managers on October 30, 2001, about the yelling, cussing and hollering he was subjected to by his supervisor. As a result, Smith's retaliation claim fails.

## III.   CONCLUSION

For the reasons stated above, we affirm.

_____