**PLASCO, INC., Appellee,**

v.

**FREE–FLOW PACKAGING CORPORATION,
Appellant,**

v.

**NIXDORFF–KREIN MANUFACTURING COMPANY, Appellee.**

No. 76–1069.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1976.

Decided Jan. 5, 1977.

Dominic Troiani, St. Louis, Mo., for appellant; Michael R. Turley, of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., on brief.

Morton D. Baron, St. Louis, Mo., for appellees; Norman W. Pressman, of Baron & Liberman, St. Louis, Mo., on brief.

Before LAY, ROSS and HENLEY, Circuit Judges.

LAY, Circuit Judge.

Defendant Free-Flow Packaging Corporation (Free-Flow) appeals from the judgment of the United States District Court for the Eastern District of Missouri, finding it in breach of an express warranty of sale by sample, and liable to plaintiff Plasco, Inc. (Plasco) in the amount of $38,519.21. Plasco brought this diversity action to recover damages for alleged breach of warranty and fraud arising out of a contract to purchase polystyrene from Free-Flow. Free-Flow counterclaimed alleging breach of contract of sale.

The basic facts are undisputed. Plasco produces plastic products, including clear terrariums, through an injection molding process, using polystyrene in pellet form as its basic raw material. In early 1974, when the supply was limited, Plasco learned that Free-Flow had polystyrene available for sale. Vernon Sappington, Plasco's plant manager, contacted John Howe, assistant to the president at Free-Flow, to discuss the possibility of Plasco purchasing some of this material. Sappington testified, and the district court found, that during this conversation, Sappington informed Howe that Plasco was an injection molder, and the material it sought would be used to produce clear terrariums. Being unfamiliar with Free-Flow and knowing Free-Flow's product was in bead form rather than pellets, Plasco requested a sample and received 13 pounds to test. When the sample fed through Plasco's machines satisfactorily and produced

first-quality clear terrariums, Plasco issued a purchase order for 500,000 pounds of material that was to be general purpose, high heat, crystal polystyrene, "per sample." At Howe's request, Nixdorff-Krein Manufacturing Co., 70% stockholder of Plasco, guaranteed Plasco's performance of the purchase order.

On March 22, 1974, Plasco received the first shipment of approximately 41,000 pounds of polystyrene beads. On March 26, 1974, it issued an inspection certificate accepting and approving that shipment. On April 8, 1974, a second shipment, approximately 30,000 pounds, was received, and a certificate of inspection was issued on April 15, 1974.

The district court found that from the outset there were feeding problems with the polystyrene beads and the terrariums produced were cloudy. Plasco contacted Free-Flow about the problems and Free-Flow suggested several methods of overcoming them. None of Plasco's efforts at correcting the problems was completely effective. On April 24, 1974, Plasco, by letter, cancelled its purchase order because the polystyrene beads supplied by Free-Flow would not feed properly into its injection molding machines.

The district court concluded that Free-Flow expressly warranted that the materials supplied would conform to the sample provided Plasco; that the sample provided fed through the machines satisfactorily and produced clear terrariums; that the materials supplied under the contract neither fed satisfactorily nor produced clear terrariums; and, accordingly, Free-Flow was in breach of its express warranty.

Actual damages of $38,519.21 were awarded based on Plasco's testimony of 801 lost machine hours of production time at an actual cost of $25.30 per hour, and $18,-253.82 spent by Plasco in an effort to adapt its machinery and the materials supplied to its needs. The district court refused to

award punitive damages because, although it believed all the elements of fraud were established, it found that Plasco failed to prove malice.

On appeal Free-Flow contends: (1) that there was insufficient evidence to support the district court's conclusion, and the district court erred in concluding that there was a breach of warranty by sample; (2) that the evidence was insufficient to support the district court's finding that Plasco was damaged in the amount of $38,519.21; and (3) that the district court erred in dismissing Free-Flow's counterclaim and in not entering judgment in favor of Free-Flow, and against Plasco and Nixdorff, on its counterclaim.[1]

Although we find the evidence was sufficient to support the district court's holding that Free-Flow breached its contract with Plasco and may not recover on its counterclaim, we find that Plasco failed to prove that its damages were causally related to that breach or to any breach of warranty.

*Free-Flow's Counterclaim.*

■ The evidence sustains the trial court's finding that Free-Flow failed to furnish Plasco with a crystal-clear product as required by the purchase order. It is undisputed that Free-Flow obtained the beads it furnished Plasco from Crest Container Corporation (Crest). Furthermore, an official of Crest testified that the raw material it supplied to Free-Flow was "off-grade" and contaminated. Although Plasco originally accepted the raw material as satisfactory, when the material was processed cloudiness and contamination were apparent in the terrarium parts. It would appear that tests by third persons verified this contamination even though the evidence is somewhat conclusory. Under the circumstances we find sufficient evidence to sustain a denial of recovery on Free-Flow's counterclaim against Plasco for breach of contract by failing to accept the remaining material.

---

1. The district court classified the contract as an installment contract within Mo.Rev.Stat. § 400.2–612 (1969). Since it found Free-Flow to be in breach of the entire contract when the first two installments failed to conform to the warranty, it held that, under Mo.Rev.Stat. § 400.2–703 (1969), there could be no recovery on the counterclaim.

*Plasco's Damages.*

We turn now to Plasco's claim for damages allegedly caused by Free-Flow's breach of warranty by sample. Missouri law provides:

(1) Express warranties by the seller are created as follows:

.　　.　　.　　.　　.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Mo.Rev.Stat. § 400.2–313(1)(c).

Plasco urges that since the material supplied contained impurities and the sample did not, under the statute, Free-Flow breached an express warranty of sale by sample. We agree. Contrary to the district court's findings and Plasco's arguments on appeal, however, this finding does not resolve the controversy. We do not find, at least on the basis of this record, that Plasco proved any damages caused by the impurities. The record shows that Plasco was able to color the impure material and sell the terrariums made from it.

Plasco's entire claim for damages, as found by the trial court, is related to its "down-time" and extra costs in adapting its machinery and the polystyrene beads supplied to meet its needs. The court awarded Plasco a total of $20,265.30 for loss of production time, and $18,253.82 for the additional expenses it incurred. We find this award to be clearly erroneous.

The evidence is undisputed that these costs arose from Plasco's problems in feeding the polystyrene beads into its machines. Furthermore, the district court found that Free-Flow failed to provide a raw material which would work in Plasco's machines. Nevertheless, we fail to find any evidence on the record to support a claim for damages for breach of warranty by sample which can be related to the feeding problem Plasco encountered.

The evidence shows that Plasco tested a sample and ordered the material knowing it would be in bead form. The 13 pound sample of the beads, because of the small amount, hand-fed satisfactorily into Plasco's machines. Plasco's own employees acknowledged that to conduct a proper test it should have had a larger sample. Nevertheless, based on its inadequate testing, Plasco assumed that the bead material would work. However, the use of large quantities of the *beaded* material in the injection molding process created feeding problems resulting in lost production time. After Plasco made several attempts to correct the problem, Free-Flow suggested that Plasco pelletize the material and run it through in pellet form. Plasco did this and, *even though the material contained impurities*, the polystyrene pellets worked and Plasco no longer had feeding problems.

William Kreling, Plasco's president, wrote Free-Flow on April 24, 1974:

At the time we purchased the material you were advised that we intended to run it through our injection molding machines. Whereas it is normal to try a 50–100 pound sample before purchase, we were furnished with a 13-pound sample. As we have found out from our own experience and learned upon talking to others, small samples of this material will run through the machine; but when used in amounts required for production runs, the material will flow through the machine for several minutes but thereafter will stop flowing. We have tried numerous suggestions to correct this condition, all to no avail.

In checking with others in our industry we have found that the material cannot be used in the normal type of injection molding machine which operates with a screw-type feed. We have now been advised by you that your company has found that it connot (sic) use this material in its screw feed extruding machines. We were not advised of this prior to purchase.

James Harrison, president of Crest, testified:

Q. Do you know whether this material is suitable for injection moulding?

A. Well, I would say, no, I don't think it is suitable for injection moulding. I would not like to run it in my injection machine.

Q. Why do you say that, sir?

A. Well, because we didn't tailor the material to be put into an injection machine.

Injection moulding machines by nature need to have a specific type of material with lubricants. Basically, it should be pelletized. The requirements for injection moulding do not fit the material in its entirety that we make.

.    .    .    .    .

Q. Mr. Harrison, when you said that you wouldn't use it in your machine, was that based upon your physical observation of what these beads looked like, or your knowledge of the process which led to the generation of these outfall beads?

A. I have one reservation in using beads primarily, period, and it is that the material has a tendency to scar the barrels of injection moulding machines, and I would look for this immediately; that if I had to use this material, it would probably scar my barrel.

As I say, this is not normal. Injection moulding machines, 99 to 100 percent, require pelletized material, so it would not be normal for me to use it in there.

■ With this evidence the only fair conclusion is that the size and form of the material, not its impurity, caused Plasco's feeding problems and the resulting "downtime."

Thus, the question remaining is whether Free-Flow is liable to Plasco under any theory for the problems created by the size or form of the material supplied. The trial court made no such finding and the record fails to substantiate any such claim.

■ Breach of warranty by sample was the only theory Plasco relied on in the trial court and the only basis of recovery found by the trial judge. In regard to the size and shape of the material, we find there was no breach of warranty by sample under Mo.Rev.Stat. § 400.2–313(1)(c) since the material received generally conformed in size and shape with the beads furnished as a sample.

■ Beyond this the record demonstrates no other basis for liability. We find no implied warranty of fitness for particular purpose under Mo.Rev.Stat. § 400.2–315 (1969). The statute requires that before there is an implied warranty the buyer must rely on the "seller's skill or judgment to select or furnish suitable goods." Here, although Plasco informed Free-Flow of its needs and that it had a screw type injection machine, there is no evidence that Free-Flow knew more about the machine than did Plasco, who owned and operated it and was aware that it had always used pellet size material. Although there is evidence that Free-Flow's Howe informed Sappington that they had had feeding problems in the past but had overcome them, Free-Flow made no representation that the bead material would work in Plasco's machine. In fact there is no evidence that Free-Flow even knew the exact type of machine Plasco intended to use. The evidence demonstrates that Plasco conducted its own tests from the admittedly inadequate sample. In this record there is no proof that Plasco relied on any representation by Free-Flow that the beads would work in its machine.[2]

---

2. In fact Plasco's Sappington testified to the contrary:

Q. Now, when you were with Plasco, did you always request a sample from a manufacturer when you were purchasing raw material?

A. Not from the major suppliers, no.

Q. Did you on occasion request samples?

A. If it was from an unknown supplier, yes, sir.

.    .    .    .    .

Q. And in the instances when you requested samples, why did you do that?

A. Because I was unsure of the material, whether it would perform satisfactorily.

Q. So, in those instances where you weren't certain about the material, you didn't rely on the manufacturer, you got a sample and you looked at the results of the samplings, is that true?

A. Only from brokers or unknown suppliers.

Even if Free-Flow knew Plasco's particular purpose and the exact type of machine to be used, Missouri law holds:

> [T]he mere fact of knowledge by the seller of the purpose for which the buyer desired the article is not sufficient to show a reliance by the buyer upon the skill, judgment and experience of the seller to raise an implied warranty of fitness. [Citations omitted]. Where the buyer understands what he wants and makes an independent examination of the product and tests the product in order to determine its fitness for the intended use, there can be no implied warranty of fitness for a particular purpose. Under the aforesaid circumstances the buyer does not rely on the seller's skill and judgment, but instead relies on his own judgment formed as a result of his examination and tests of the product.

*Interstate Folding Box Co. v. Hodge Chile Co.*, 334 S.W.2d 408, 414 (Mo.Ct.App.1960). *See also, Price Bros. Lithographic Co. v. American Packing Co.*, 381 S.W.2d 830 (Mo. 1964). There is no evidence of reliance and therefore no warranty of fitness for use.

We reverse the award of damages and direct the trial court to enter judgment in favor of Free-Flow for failure of Plasco to prove any related damage. The judgment dismissing the counterclaim is sustained.

The costs shall be divided evenly between the parties.

Q. But as to brokers and unknown suppliers that is true, is it not?
A. That I got samples from them, yes.
Q. And the reason why you got the sample is you didn't want to rely on the broker or the supplier, you wanted to see the material for yourself, isn't that true?

A. Yes, sir.
Subsequent testimony indicates that at the time of the transaction in question Sappington was completely unfamiliar with Free-Flow.