# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3264

_____

Outdoor Central, Inc.; The Central Trust Bank

*Plaintiffs - Appellees*

v.

GreatLodge.com, Inc.

*Defendant - Appellant*

v.

Active Network, Inc.

*Cross Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: June 12, 2012
Filed: August 23, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The Central Trust Bank and its subsidiary Outdoor Central, Inc. sued GreatLodge.com, Inc. for fraudulent inducement, among other things, arising out of an acquisition agreement. After trial, the district court[1] found for Central Trust and Outdoor Central, rescinding the acquisition. GreatLodge appeals. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

I.

Central Trust and GreatLodge each provided automated licensing services to state fish and wildlife agencies. Central Trust, with a partner company, established this market using a telephone-based technology. GreatLodge sought to enhance the same services using an internet-based system, but it had both financial and logistical difficulty entering the market. Around the same time, Central Trust's partner company decided to compete independently.

In November 2004, Central Trust representatives traveled to meet with GreatLodge. GreatLodge's CEO made a presentation to Central Trust explaining the "advantages" of a merger. GreatLodge discussed "Imminent Market Opportunities," stating that ten to fourteen state contracts would become available in the following twelve months. GreatLodge believed that the "dominant contractor" would have "a unique opportunity to build a common technology platform." GreatLodge's CEO was invited to make a presentation the next month to Central Trust's upper management.

This presentation generates most of Central Trust's fraud allegations. In it, GreatLodge told Central Trust that its system was "scalable to add many new states, simultaneously and quickly." GreatLodge asserts it warned of the risks in the

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

marketplace, but it expressed a belief that the likelihood and potential impact of those risks were minimal.

Shortly after the presentation, GreatLodge fired three (roughly half) of its engineers, including its Chief Technology Officer. All three were hired by Central Trust's former partner. Learning this, Central Trust was skeptical of GreatLodge's assertion that the firings were best for the company, but GreatLodge persuaded it that performance issues caused the terminations.

Central Trust's Chief Financial Officer encouraged it to conduct more diligence on GreatLodge. Investigating GreatLodge's existing clients and licensing systems, Central Trust discovered that officials in two of GreatLodge's contract states were concerned about the terminations. To evaluate GreatLodge's technology, Central Trust also sent technology experts. One complained about GreatLodge's aging technology and loss of key staff, among other things. Another was concerned by the lack of documentation available for the GreatLodge systems and the managerial shortcomings of the most senior software engineer remaining at GreatLodge. This expert testified that if he had known of the terminations, he would have wanted to discuss them with GreatLodge's former Chief Technology Officer.

On March 1, 2005, Central Trust bought GreatLodge for $965,000 and additional performance-based compensation for nine years after the sale. Central Trust transferred GreatLodge to a subsidiary, Outdoor Central. Though successful in winning contracts, Outdoor Central soon experienced significant difficulties delivering on them.

On May 15, 2008, Central Trust and Outdoor Central sued GreatLodge for fraud in the inducement and breach of warranty (under the common law and the U.C.C.). GreatLodge counter-claimed for breach of contract (because Central Trust missed the first three of the nine yearly payments), unjust enrichment (in the

alternative), and breach of the duty of good faith and fair dealing. Around December 2008, Central Trust and Outdoor Central sold their combined system assets, including those purchased from GreatLodge, to a third party.

Central Trust's claims for common law breach of warranty, fraud, and declaratory relief survived summary judgment, as did GreatLodge's claims for breach of contract and breach of the duty of good faith and fair dealing. After a bench trial on the fraud claim, the district court found for Central Trust and granted equitable and declaratory relief. The district court also entered judgment for Central Trust on GreatLodge's counter-claims. After briefing, the district court awarded Central Trust $965,000, the purchase price of GreatLodge. After this court resolved other issues and the case was remanded,[2] Central Trust amended its complaint to allege only fraud, and both parties requested that the award be reduced to $773,270 (the transaction price minus the $191,730 paid for equipment, furniture, and fixtures). The district court reduced the award accordingly.

## II.

In reviewing a judgment after a bench trial, this court reviews "the court's factual findings for clear error and its legal conclusions de novo." *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir. 2002). This court also reviews credibility determinations for clear error. **Fed. R. Civ. P. 52(a)(6)**; *see also Schaub v. Vonwald*, 638 F.3d 905, 915 (8th Cir. 2011) ("When findings are based on witness credibility, Rule 52(a) demands even greater deference to the trial court's findings.").

To establish fraudulent inducement, Central Trust was required to prove that there was a false, material factual representation; GreatLodge knew of its falsity or was ignorant of its truth, and intended that Central Trust would act upon it in a

---

[2]*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115 (8th Cir. 2011).

manner reasonably contemplated; and that Central Trust was ignorant of the representation's falsity, relied on its truth, had the right to do so, and that its reliance consequently and proximately caused it injury. *Toghiyany v. AmeriGas Propane Inc.*, 309 F.3d 1088, 1092 (8th Cir. 2002) (applying Missouri law); *Arnold v. Erkmann*, 934 S.W.2d 621, 626 (Mo. App. 1996).

A.

GreatLodge argues that its representations were opinions, comparisons, and projections—none of which are factual representations actionable as fraud. In Missouri, generally "whatever is susceptible to exact knowledge is a matter of fact, while that not susceptible is generally regarded as an expression of opinion." *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 587-88 (Mo. App. 2000) (citation and internal quotation marks omitted) (finding statement that property was "buildable" was not opinion). However, a "given representation can be an expression of opinion or a statement of fact depending upon the circumstances surrounding the representation." *Clark v. Olson*, 726 S.W.2d 718, 720 (Mo. banc 1987) (finding statement that a house "was in good condition" actionable as fraud). While "[p]uffing of wares, sales propaganda, and other [similar] expressions of opinion . . . are permitted," representations concerning "the physical condition" or "physical character" of the item being sold are actionable. *Id.*

In particular, GreatLodge says that "scalable" is a marketing term devoid of technical meaning. This is belied by the expert testimony and the context of the statement. GreatLodge's presentation stated that its system was "[s]calable to add many new states, simultaneously and quickly." GreatLodge asserts that this statement was related only to the call center aspect of its business. However, GreatLodge also represented that six new contracts per year could be added to the system, without specifying that it was referencing only one part of the system. The former Chief

-5-

Technology Officer testified that the word "scalable" should not have been used to describe the system.

GreatLodge also contends that it truthfully represented the capabilities of its system and one of its remaining employees. To the contrary, the presentation mentioned several specific features of the system that did not exist. The district court found GreatLodge's CEO lacking in credibility, concluding that the remaining employee could not be reasonably described as the "architect" of GreatLodge's system, which is what GreatLodge represented. In fact, he had written very little of the code and not worked on anything as complex. His coding was below average, and he was incapable of maintaining or fixing the system. Eleven months after the acquisition, he wrote an email admitting many of its problems, stating: "It's time that Central Bank should know the truth." Others testified that it was well known within the company that its system was flawed in undisclosed ways, not adaptable, and hard to maintain by anyone who did not build it. The former Chief Technology Officer had previously disclosed the truth to other potential buyers, which, the district court found, is why he was fired. In his deposition, he identified many of GreatLodge's representations as untrue or exaggerated. Ultimately, the district court found that GreatLodge's CEO "knew he did not have the type of program he was trying to sell."

The district court did not err in its credibility determinations or in its findings.

B.

GreatLodge argues that Central Trust's reliance was not justified because it conducted its own independent investigation before the acquisition. "Despite the general rule that reliance is a fact issue for the jury, a party who undertakes an independent investigation does not have the right to rely on the misrepresentation of another." ***Renaissance Leasing, LLC v. Vermeer Mfg. Co.***, 322 S.W.3d 112, 132 (Mo. banc 2010). The "independent investigation rule" has three exceptions: (1) the

investigating party makes only a partial investigation and relies on both the results of the inspection and the misrepresentation; (2) the buyer lacks equal standing to find the truth, and the facts are not easily ascertainable but are peculiarly within the knowledge of the seller; and (3) the seller makes a specific and distinct misrepresentation. *Renaissance*, 322 S.W.3d at 132-33.

GreatLodge says that Central Trust completed a full but faulty investigation, pointing to its failure to inform its own technology experts of the firings. The district court properly found that Central Trust completed only a partial investigation—partly because GreatLodge fired the people most knowledgeable about its system—and relied largely on GreatLodge's misrepresentations. Moreover, the district court also rightly concluded that as to the second exception, many of GreatLodge's defects were peculiarly within its knowledge. GreatLodge counters that Central Trust was in a superior position because it knew of its existing technological capabilities and thus what integration of the two systems would require. GreatLodge relies on precedent about product testing: "Where the buyer understands what he wants and makes an independent examination of the product and tests the product in order to determine its fitness for the intended use, . . . the buyer does not rely on the seller's skill and judgment, but instead relies on his own judgment formed as a result of his examination and tests of the product." *Plasco, Inc. v. Free-Flow Packaging Corp.*, 547 F.2d 86, 91 (8th Cir. 1997) (applying Missouri law and reversing judgment for breach of warranty). This precedent is inapposite because there was no feasible way to fully test the system in this case. As for the third exception, GreatLodge made specific and distinct representations as to the scalability and features of its system and the abilities of its employee. It also made specific and distinct representations as to the value of its fired employees.

The district court did not err in finding that Central Trust's reliance was justified.

C.

"In Missouri, a victim of fraud has two options: rescission of the transaction, which permits the victim to return any benefits received from and to recover benefits conferred on the perpetrator, or affirmance of the transaction, which permits the victim to recover damages." *In re Usery*, 123 F.3d 1089, 1093 (8th Cir. 1997). GreatLodge argues that Central Trust affirmed the contract (including the obligation to make yearly payments to GreatLodge) by first seeking damages. The award being appealed, however, is the properly awarded declaratory and equitable relief, which includes restitution and avoidance of Central Trust's scheduled yearly payments to GreatLodge.[3]

*******

The judgment of the district court is affirmed.

_____

---

[3]GreatLodge argues that Outdoor Central should not have received any monetary relief because it was not a party to the acquisition. In fact, the district court found "in favor of *plaintiffs* on their claim for declaratory and equitable relief" but awarded monetary relief only to "*plaintiff The Central Trust Bank* in the amount of $773,270.00." (Emphases added).