SHEPHERD,
concurring in part and dissenting in part.
I concur in the court’s decision to affirm the district court in denying Qwest’s claims for intentional interference with a business relationship and unfair competition. However, I would also affirm the district court’s denial of Qwest’s unjust enrichment claim.
“ ‘In reviewing a judgment after a bench trial, this court reviews the court’s factual findings for clear error and its legal conclusions de novo.’” Tussey v. ABB, Inc., 746 F.3d 327, 333 (8th Cir. 2014) (quoting *901 Outdoor Cent. Inc. v. GreatLodge.com, Inc., 688 F.3d 938, 941 (8th Cir. 2012)). The majority, finds that the district court erred in denying Qwest’s unjust enrichment claim against FC because FC’s conduct was neither illegal or inequitable. The court finds that the Sancom-FC contract was never legal, because the FCC decision in Farmers II was retrospective as well as prospective, i.e. that LEC’s could never bill IXCs for bridged conference calls. This misses the point. It is undisputed that two separate and distinct contractual relationships existed under the facts of this case. First, Qwest had a contractual relationship with Sancom governed by federal laws and regulations. Charges by Sancom to Qwest are set forth in a tariff which Sancom filed with the FCC and the South Dakota Public Utilities Commission, Money was paid by Qwest to Sancom based upon minutes of use attributable to qualifying “end users” under the tariffs. Second, Sancom and FC entered into a contract under whieh San-com agreed to provide FC with a location for a conference call bridge and FC agreed to provide a minimum number of minutes to the bridge in exchange for a marketing fee. Money was paid by Sancom to FC as a per minute marketing fee for call traffic to FC’s conference call bridge.
FC was not a party to a contract between Sancom and Qwest and did' not participate in the billing relationship between those entities. Nor was FC a party to the FCC proceedings. In Farmers II the FCC, based upon newly presented evidence, ruled that conference call customers were not end users or customers under the LEC’s tariff and that IXCs such as Qwest were not liable for termination charges with respect to that traffic. However, the FCC exercised no jurisdiction over FC and the written decision does not criticize the motives of FC in entering into the contract with Sancom much less invalidate the contract or opine that it is unenforceable. In this action, the district court found that “FC had no obligations under any tariff because it is not a carrier,” “FC was under no legal obligation to ensure that Sancom complied with its tariff,” and, “significantly, that FC was not the actor who violated Sancom’s tariffs, and therefore FC did not engage in conduct that was actionable under a federal or state statute.” Indeed, the majority accurately concludes: “There is nothing unlawful about a company acting to take advantage of a favorable regulatory scheme — (Supra p. 897.)
Not a party to an illegal agreement and having no legal obligation to ensure that Sancom complied with its tariff, FC can not be said to have received a benefit “ ‘from the plaintiff which would be inequitable to retain without paying for its value’” an essential element of an unjust enrichment action. Apache Corp. v. MDU Res. Grp, Inc., 603 N.W.2d 891, 895 (N.D. 1999) (quoting Zuger v. North Dakota Ins. Guar. Ass’n, 494 N.W.2d 135, 138 (N.D. 1992)). The district court’s findings are amply supported by the record and are consistent with the contracts between the parties and the order of the FCC. The decision of the district court to decline this equitable remedy was not an abuse of discretion. Entergy Arkansas, Inc. v. Nebraska 358 F.3d 528, 554 (8th Cir. 2004) (“We review a decision not to impose a particular equitable remedy for an abuse of discretion.”).
I would affirm the district court’s judgment in favor of FC on Qwest’s unjust enrichment claim.